THOMAS BIGGINS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 29, 1883.*

1. STATUTE—*giving a new remedy applies to prior cause of action.* Under the act of 1881, amendatory of section 253 of the Revenue law, so far as it gives a new remedy to enforce the lien on land for taxes by foreclosure in equity, the remedy may be used or employed to enforce a preëxisting right, as well as one subsequently accruing. It makes no difference when the cause of action arose,—the remedy, when given, may be availed of.

2. TAXATION—*lien for taxes, and "costs, interest or penalty"—under acts of 1872 and 1881.* Section 253 of the Revenue act of 1872, made not only the "taxes" on land a lien thereon, but also the penalties, interest and costs, as section 292, division 14, of that act declares that the word "tax" or "taxes," when used in that act, shall include "costs, interest or penalty." Therefore the act of 1881, amending section 253, although it, in terms, makes not only the taxes, but the "penalties, interest and costs" a lien upon the property assessed, creates no new lien.

3. SAME—*remedy by foreclosure—to what it is limited.* The statute limits the remedy in equity for the collection of taxes by foreclosure to cases where the "taxes for two or more years, upon the same description of property, shall have been forfeited to the State."

4. SAME—*what constitutes a forfeiture to the State.* Real property is forfeited to the State when, at any regular tax sale under the Revenue act, the collector shall offer it for sale, and it shall not be sold for want of bidders.

5. SAME—*effect of irregularities in obtaining judgment under which forfeiture was had.* On an application for judgment against land for the current and back taxes, and for penalties, interest and costs, it is not important to inquire whether the judgment under which the land was forfeited to the State was in every respect in conformity to law, if the land was in point of fact so forfeited. So in a suit in chancery for foreclosure in respect to taxes, penalties, etc., due upon forfeited lands, the question whether the judgment under which the forfeiture was had was in strict conformity with the statute will not be considered.

6. SAME—*payment of current taxes—as a bar to a forfeiture in respect to back taxes.* The payment by the owner of land, of the current taxes thereon, to which have been added back taxes with penalties, interest and costs, will not operate to avoid a forfeiture of the land for such back taxes, penalties, etc.

7. SAME—*adding "penalties, interest and costs"—under what circumstances allowable—the statute construed.* Under sections 129 and 229 of the Revenue act now in force, in case of real property having become forfeited to the State for non-payment of taxes, "penalties, interest and costs" may be imposed in respect to such forfeited real property, which may be collected, with back taxes. In such case section 277 of that act has no application, as it has reference to a case where a tax assessed on property liable to taxation has been prevented from being collected for any year or years on account of any erroneous proceedings.

8. FORMER ADJUDICATION—*concludes only as to right sought in prior suit.* A judgment in a suit at law against a party, holding that the defendant was not personally liable for back taxes, penalties, interest and costs, is no bar to a suit in equity to enforce the statutory lien on the land for the same taxes, penalties, interest and costs, and subject it to sale for the same, nor is a decree dismissing a bill filed to enforce such lien for want of jurisdiction a bar to a second one filed for the same purpose after the enactment of a law giving such remedy.

9. SAME—*judgment against land for taxes.* A land owner, in 1879, appeared in the county court and objected to judgment against his land for the taxes of 1878 and prior years, claiming that there was no legal forfeiture of the property for the years 1871 to 1878, and that the clerk had no right to place such taxes on the tax book for either year, for the "reason that the several tax sales were made under pretended judgments for taxes for said years without any process, as required by law." Judgment was rendered against the property for the greater part of the back taxes, and judgment was again rendered against it in 1880 for the current taxes, and back taxes, with penalties, interest and costs thereon, and in 1881 a similar judgment was

rendered, over the objection of the owner: *Held*, that the owner, by these judgments of the county court, was concluded from questioning their validity, and denying that the land was legally forfeited.

APPEAL from the Circuit Court of Jersey county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. IRWIN & SPRINGER, and Mr. J. W. COPPINGER, for the appellant:

To create a forfeiture of lands to the State for unpaid taxes, there must have been a notice, a judgment, a process issued for the sale of the property, an offer of the property for sale, and a failure to sell for want of bidders. *Vetter* v. *People*, 3 Bradw. 381; *Smith* v. *People*, id. 380; *Scott* v. *People*, 2 id. 642. See, also, *Spellman* v. *Curtenius*, 12 Ill. 409; *People* v. *Owners*, 32 id. 408; *McKee* v. *Supervisors*, 53 id. 477.

There being no forfeiture of the lands in question, it was error on the part of the collector to charge them with penalties which can accrue only against forfeited land. Appellant purchased these lands in November, 1877, and has paid the. taxes on all subsequent years, and we submit that under sections 277 and 278 of the Revenue law,—which are the only ones applicable,—he is not liable for these back taxes and penalties.

If it be said we are precluded by the judgment of the county court from raising this question, we answer that the act by virtue of which this suit was brought does not predicate the right of foreclosure on the judgment of the county court, but upon the taxes, and it makes, not the judgment record, but the collector's books, *prima facie* evidence of the amount due. Prior to the act of 1881 the taxes were a lien upon the land, but that act makes not only the taxes, but the penalties, interest and costs, a lien, and not only a lien, but a prior and first lien, superior to all other liens and incumbrances.

This act was intended to operate prospectively, and not retrospectively. Throughout the act the future and not the past tense is used. It speaks of the "penalties, interest and costs that may accrue." Courts will not give a law a retroactive operation, even though it might be done without a violation of the constitution, unless that intention is manifested by the most clear and unequivocal language. *Betts* v. *Bond*, Breese, 223; *People* v. *Thatcher*, 95 Ill. 109; Wade on Retroactive Laws, secs. 34–39.

Mr. J. H. YAGER, State's Attorney, for the People:

Where the party appears and resists judgment against his land for taxes, he waives all defects in the notice of the application, and it matters not if there was no notice at all. *People* v. *Sherman*, 83 Ill. 165.

As to the matters preceding the application for judgment, they must be considered *res judicata*, and not to be again investigated. *Lehmer* v. *People ex rel.* 80 Ill. 601.

Errors and omissions not affecting the substantial justice of the tax will not vitiate. Sec. 191, Revenue act; *Beers* v. *People*, 83 Ill. 88; *Edwards et al.* v. *People*, 88 id. 340.

It is asked if a forfeiture can be had on back taxes alone. The record shows that the taxes on this land were paid for the years 1880, 1879 and 1878, on March 31, 1881, from which it is plain that the back taxes were added to the current year's tax.

On an application for judgment against land for taxes, including back taxes on lands forfeited for previous years, it is not competent to inquire whether the judgments for taxes of previous years were in strict conformity to the statute. If those judgments were erroneous, the remedy was by appeal or writ of error. (*People* v. *Smith*, 94 Ill. 226.) The judgment is binding, though erroneous. *People ex rel.* v. *McCrea*, 92 Ill. 619.

18—106 ILL.

The amendatory act of 1881 gives a new remedy to enforce preëxisting liens for taxes, and may be used for that purpose. The other suits against appellant are no bar to relief under this statute. The dismissal of the prior bill was for want of jurisdiction, and decided nothing as to the merits of this controversy.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was brought under that clause of the act of 1881 which declares "the taxes upon real property, together with all penalties, interest and costs that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and incumbrances, from and including the first day of May in the year in which the taxes are levied until the same shall be paid, which lien may be foreclosed in equity in any court of competent jurisdiction, in the name of the People of the State of Illinois, whenever the taxes for two or more years, upon the same description of property, shall have been forfeited to the State." The object of the bill is to subject a piece of land, known as the "old penitentiary grounds," to the payment of back taxes assessed thereon for the years 1871 to 1877, both years inclusive, together with the "penalties, interest and costs" that have accrued thereon. It is alleged in the bill that Thomas Biggins, who is made defendant, became the owner of the property in 1877, under deeds containing a clause providing the grantee shall pay all taxes and assessments, both general and special, levied and assessed on the property prior to and up to the date of such deeds. The owner failing to pay the taxes for the several years mentioned, it is alleged the collector gave notice of application for judgment and order of sale, as required by statute, in pursuance of which such proceedings were had in the county court that judgments for the taxes due for each year were obtained, and under such judgments the property being offered for sale was forfeited to

the State for want of bidders; that at the May term, 1881, after the property had been assessed in the name of the present owner, judgment was rendered against it for the taxes, interest, penalties and costs then due thereon, and an order of sale made, in pursuance of which it was advertised and offered for sale in conformity to law, and was again struck off to the State for want of bidders, and that the taxes for more than two years have been assessed on the property, and it has been forfeited for more than two successive years for the non-payment of taxes thereon. An amendment to the bill states the ownership and source of title to the property as in the original bill, the recovery of judgment against the property at the May term, 1880, of the county court, for delinquent taxes, penalties, interest and costs, under which it was advertised and offered for sale in the manner pointed out in the statute, and was struck off to the State, and also restating the proceedings of the May term, 1881, of the county court, as set forth in the original bill.

The answer of the owner defending admits ownership of the property, and sets up as a defence, first, that the "penalties, interest and costs" on the taxes included in the decree are without authority of law, and are, for that reason, no charge on the property in his hands; and second, that a suit at law was brought against the present owner for the identical taxes, penalties, interest and costs involved in this suit, in which it was held by the Supreme Court the owner was not liable for such taxes, and at the same term of court a bill in chancery was filed against him, in the name of the People, to enforce the statutory lien for such taxes, which bill was dismissed by the circuit court, and that decree was afterwards affirmed in the Supreme Court. Other matters are set up in the answer, but it is not necessary to state them to an understanding of the questions of law discussed. Should it appear to be important to do so, other facts will be stated in the brief discussion that is to follow.

Before passing to the consideration of what is thought to
be the real subject of the controversy, so far as the merits of
the case are concerned, it may be well first to clear away all
mere technical objections to the present decree. It is insisted
the act of 1881, cited, that gives a court of equity jurisdiction
to enforce the statutory lien for taxes in certain cases, can
have no application to the case in hand, and the reason
assigned is, it was the obvious intention of the General
Assembly it should operate prospectively, and not retrospect-
ively. So far as the act simply affords a remedy, it may be
used or employed to enforce a preëxisting right, as well as
one subsequently accruing. It makes no difference when
the cause of action arose,—the remedy, when given, may be
availed of. The cases cited have no application to statutes
giving a new remedy. A graver objection is, the act of 1881
not only gives a new remedy, but it creates a new lien. The
suggestion is, it is broader in its terms than the original sec-
tion (253), the place of which it takes. This, it is thought,
is a misconception of the scope of section 253 of the act of
1872. That section, it is said, only made the "taxes" a lien,
while the amendatory act of 1881 makes not only the taxes,
but the "penalties, interest and costs," a lien upon the prop-
erty assessed. It is a mistake to suppose section 253 of the
act of 1872 did not make "penalties, interest and costs," as
well as the tax itself, a lien upon the property. It is true it
is provided in section 253, "taxes" assessed on real property
shall be a lien on it until paid, and that the words "interest,
cost or penalty" are not used in that section. But by a defi-
nition contained in the same act, (section 292, division 14,)
the word "tax" or "taxes," when used in that act, is made
to include "cost, interest or penalty" imposed on property.
In this respect the act of 1872, (section 253,) and the act of
1881, mean precisely the same thing. No new lien is created
by the latter act. It will be perceived, on examining the
decree, that no penalties, interest or costs are allowed on

the taxes assessed prior to the time the act of 1872 took effect.

The position taken that the questions made on this record are *res judicata,* has nothing in its support.   An action was commenced at law, in the name of the People, against defendant, to recover a personal judgment against him for these identical taxes, penalties, interest and costs, and it was held by this court that he was not personally liable for the same.   The question whether the property itself was subject to the burden of the taxes, penalties, interest and costs adjudged against it by the county court was neither discussed nor decided.   It is also true a bill was filed in a court of chancery to enforce the lien given by the statute for these identical taxes on this property, and that it was dismissed for want of jurisdiction in a court of equity to entertain such a bill.   Since then the legislature, by the act of 1881, has given equity jurisdiction in such cases, and the bill may now be entertained.

Coming now to consider the merits of the controversy, no objection seems to be made that the property in the hands of the present owner is not liable for the unpaid taxes since 1871, and including that year, and up to and including the year 1877.   Since then the current taxes have been paid by the owner.   It appears a large portion of the sum found by the decree of the circuit court to be due on the property, consists of "penalties, interest and costs" imposed for the non-payment of the taxes imposed on the property since the act of 1872 took effect.   Nothing, prior to that time, was added to the taxes as "penalties, interest and costs," nor was any personal decree rendered against defendant on account of these taxes.   It is the "penalties, interest and costs" included in the decree against the property ordered to be sold, that are said to be without sanction of law, and therefore wrongfully included in the decree.   In the first place, it may be observed this is not a case where a tax assessed on prop-

erty liable to taxation is prevented from being collected for any year or years on account of any erroneous proceedings, and hence section 277 of the Revenue law, cited, has no application. The case rather falls within the operation of sections 129 and 229 of the Revenue act now in force, which authorize the imposition of penalties, interest and costs, and provide for the collection of the same, with back taxes. Section 129, it will be observed, declares that in all cases where any real property has heretofore been or may hereafter be forfeited to the State, it shall be the duty of the county clerk, in making up the amount of tax due on such real property for the current year, to add the back taxes, with interest, penalties and printer's fees, at a certain rate therein stated, and section 229, as amended by the act of 1881, provides when and how the same shall be collected. The statute limits the remedy in equity for the collection of taxes by foreclosure to cases where the "taxes for two or more years, upon the same description of property, shall have been forfeited to the State." Hence the inquiry suggested becomes important, is the property in question that which is properly classed as forfeited property, within the meaning of section 129, cited. Unless it is, it is quite evident a court of equity has no jurisdiction. It is insisted there was no legal forfeiture of the property to the State for the years for which it is charged taxes are due, and the reason assigned is, there were no valid judgments against the property for any of those years for the taxes due thereon. That, in the opinion of the court, is not now a subject of inquiry. At the May term, 1879, of the county court, the owner appeared and objected to judgment against his land for the year 1878 and prior years. In the second objection of the series filed, the owner protests against the entry of judgment for the years 1871 to 1877 inclusive, because for each of those years there was no legal forfeiture of the land, and the clerk had no right to place it on the tax books for either year mentioned, for the

"reason that the several tax sales were made under pretended judgments for taxes for said years without any process, as required by law." It seems the objections made by the owner were in part sustained, and the court reduced the amount claimed to be due on the land for taxes, penalties, interest and costs, from $7503.93 to $5163.26, and rendered judgment against the land, over the objection of the owner, for the latter sum. Judgment was also rendered against the property, in 1880, for the current taxes and back taxes, with penalties, interest and costs thereon. In 1881 the owner again appeared in the county court, objected and defended against any judgment against this same property, but the court, after hearing evidence, overruled the objection, and rendered judgment against the land for current taxes and back taxes, with penalties, interest and costs thereon, in the sum of $6408.18.

Real property is forfeited to the State when, at any regular tax sale under the Revenue act, the collector shall offer the property for sale, and it shall not have been sold for want of bidders. In *The People* v. *Smith,* 94 Ill. 226, it was ruled that on application for judgment against lands for taxes it is not important to inquire whether the judgments for taxes for the previous years were in strict conformity with the statute, and that under the statute relating to the revenue, where a forfeiture of the land has accrued to the State, the back taxes, with interest and costs, are to be added to the current taxes, regardless of the fact whether all the formalities required by statute have been observed prior to rendering the judgments as to the preceding years. The remedy, if any existed in such cases, was by appeal from such judgments. In *Belleville Nail Co.* v. *The People,* 98 Ill. 399, it was held forfeited land was subject to "penalties, interest and costs," under the 129th section of the Revenue act, when such land had in fact been forfeited, whether in due form or not. The principles of the cases cited must control the present decision. The

land in question was in fact forfeited to the State for every year prior to and including 1877, for which the property is charged with back taxes, and with penalties, interest and costs, and it is unimportant whether the judgments under which the land was offered for sale conformed, in every respect, to the requirements of the statute. It was so expressly decided in *Belleville Nail Co.* v. *The People, supra.*

No objection whatever is urged against the validity of the tax judgments against the property for the years 1879, 1880 and 1881. The owner appeared in the county court when application was made by the collector for judgment against delinquent lands, and defended on the merits as to the validity of the taxes charged against his property. Such judgments are valid and conclusive against the owner, and must stand, unless reversed on appeal or error, or impeached for fraud. *Graceland Cemetery Co.* v. *The People*, 92 Ill. 619.

The point is made there could be no valid forfeiture of the property for taxes under the judgments for taxes for the years 1878, 1879 and 1880, because the owner paid the current taxes for those several years. It is to be observed section 229 of the Revenue law provides the amount due on lands forfeited to the State and remaining unpaid on the first day of November, shall be added to the taxes for the current year, and the amount thereof shall be reported against the collector with the amount of the taxes for that year. That was done in this case; but it was not until long after the taxes, with penalties, interest and costs, had been "added" to the taxes of those several years, that the owner paid the current taxes. It would be singular, indeed, if the owner of lands owing back taxes could, by paying the current taxes, avoid a forfeiture of his land for back taxes, and thus escape all penalties, interest and costs imposed by statute to secure prompt payment of taxes. That would be a mere evasion of the statute, which the law will not tolerate.

A careful consideration of all the objections taken shows no substantial defence either to the back taxes or to the penalties, interest and costs charged against defendant's land, nor has the defence sought to be made any equitable considerations in its support. All these taxes were an incumbrance on the land when he bought it, and by the acceptance of the deeds containing a clause so providing, he expressly agreed to pay all taxes and assessments, both general and special, levied and assessed on the property prior and up to the date of the deeds. It is both equitable and legal the property should be charged with the back taxes, and with the penalties, interest and costs thereon, as is done by the decree.

The decree of the circuit court will be affirmed.

*Decree affirmed.*