VIRGINIA W. HAMMOND *et al.*

*v.*

THE PEOPLE, for use, etc.

| 169 | 545 |
| 178 | 256 |
| 178 | 504 |
| 169 | 545 |
| 204 | ³476 |
| 169 | 545 |
| 207 | 20 |

*Opinion filed November 1, 1897—Rehearing denied December 9, 1897.*

1. DRAINAGE—*lien for assessments may be foreclosed in equity.* A drainage district organized under the Levee act may foreclose its lien for delinquent drainage assessments and repair taxes by a bill in equity filed under section 253 of the Revenue act, as amended in 1881, (Laws of 1881, p. 130,) in the name of the People.

2. TAXES—*bill to foreclose tax lien—effect where illegal taxes have been included in judgment.* The including of illegal taxes, separable from the rest, in the judgments of sale under which forfeitures occurred, does not affect the jurisdiction of a court of equity to entertain a bill under section 253 of the Revenue act, as the court may decree foreclosure for such taxes only as are found legally due.

3. SAME—*objection that assessment exceeds cost cannot be raised in proceeding to foreclose.* A judgment confirming a drainage assessment cannot be attacked in a proceeding to foreclose the lien for the unpaid assessment, upon the ground that the assessment exceeds the estimated cost of the work and the expense of the assessment.

4. SPECIAL ASSESSMENTS—*payment of debt incurred, to make improvement does not release unpaid assessments.* Payment by a drainage district of the indebtedness created to make an improvement does not extinguish the lien for unpaid assessments levied against property for its proportionate share of the cost of the improvement, none of which have been paid.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

This was a bill in chancery, filed in the Hancock circuit court in the name of the People of the State of Illinois, as complainants, for the use of the said People, the county of Hancock, the town of Rocky Run, school district No. 4 in said town, and the Hunt drainage district, against Virginia W. Hammond, William P. Hammond, and others, to foreclose the lien for taxes, special assessments, penalties, interest and costs against the east half of the north-east quarter of section 30, township 3, north, range 9, west, under section 253 of the Revenue act, it being claimed that this tract had been legally forfeited to the State for the taxes for two or more years. On the hearing before the master it was agreed by the parties for all the purposes on the hearing and trial of this cause, and for no other, that the evidence proved that this tract was forfeited for the taxes, interest, special assessments and costs due in 1887; that such forfeited taxes, etc., were carried forward to the current tax, etc., for the next year, and again forfeited; that successive forfeitures occurred in each year following, up to and including 1895, in which year the forfeiture amounted to $764.76. The master found that the judgment rendered by the county court at the May term, 1895, for the above amount, was for the taxes for the years 1883 to 1894, inclusive, and the penalties, interest and costs thereon, and that it included the special assessments of the Hunt drainage district for the years 1882 to 1894, inclusive, and also those maturing January 1, 1895; that the amount of the judgment included some costs, interest and penalties that had been improp-

erly added, and a certain excess over the annual repair tax as fixed by the jury when the district was organized; and found that at the time of the forfeiture there was then legally chargeable upon said tract the sum of $697.50, of which amount $31.60 was for State, county, town, road and school taxes, costs, etc., and $665.90 was for Hunt drainage district special assessments, viz., annual repair tax, $107.93; first assessment of benefits, $191.52; interest on same, $53.42; interest on second assessment, $191.10; third assessment, $105.60; interest on same, $16.33. The court approved the master's report, and a decree was entered accordingly, ordering foreclosure.

MANIER, MILLER & WILLIAMS, A. W. O'HARRA, and TRUMAN & PLANTZ, for plaintiffs in error:

In construing statutes, courts, in order to ascertain the intention of the legislature, will judicially notice such contemporaneous history as led to and probably induced the passage of the laws. *Insurance Co.* v. *Talbot*, 113 Ind. 373.

At common law, foreclosure for the lien of taxes was unknown. Statutes in derogation of the common law will be construed strictly. *Schuyler County* v. *Mercer County*, 9 Ill. 20; *Melody* v. *Reab*, 4 Mass. 471; *Gibson* v. *Jenney*, 15 id. 205; *Burnside* v. *Whitney*, 21 N. Y. 148.

Section 253 of the Revenue law has exclusive reference to the foreclosure of liens for taxes under the Revenue law, and the consequent penalties, interest and costs. It was never intended to apply to the foreclosure of liens for drainage assessments, which are quite a different thing from the ordinary revenue of the State. *Samuels* v. *Drainage Comrs.* 125 Ill. 536.

Special assessments are not taxes and not within general provisions thereof. *Chicago* v. *Colby*, 20 Ill. 614.

Taxes are burdens or charges imposed upon persons or property to raise money for public purposes. Assessments are not regarded as burdens but as compensation

for the enhanced value which the property has received from the improvement.  *Mix* v. *Ross*, 57 Ill. 124.

Taxation does not embrace assessments for benefits. *Chicago* v. *Theological Union*, 115 Ill. 251; *In re Mayor of New York*, 11 Johns. 77; *Blecker* v. *Ballou*, 3 Wend. 263.

. A special assessment is not a tax, but an exercise of power of eminent domain.  *Chicago* v. *Larned*, 34 Ill. 203.

Real property is forfeited to the State when, at any regular tax sale under the Revenue act, the collector shall offer the property for sale and it shall not have been sold for want of bidders.  *Biggins* v. *People*, 106 Ill. 270.

To create a forfeiture there must have been a judgment, a process issued for the sale of the property, an offer of the property for sale, and a failure to sell for want of bidders.  *Scott* v. *People*, 2 Ill. App. 644.

WILLIAM N. GROVER, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

It is insisted by plaintiffs in error, first, that section 253 of the Revenue act, (Hurd's Stat. 1897, p. 1358,) providing for the foreclosure in equity of the lien for taxes where there have been two forfeitures of the premises for non-payment and want of bidders at the sale, does not apply to special assessments for drainage purposes, and that a court of equity has no jurisdiction to entertain a bill to foreclose such lien; second, that if it be held that equity has jurisdiction to entertain such a bill, the decree entered in this case was erroneous, for the reason that, as it appears certain illegal taxes were included in the several judgments of the county court under which the forfeitures occurred, there was, in fact and in law, no valid forfeiture of said tract of land; and third, it appearing from the evidence that the bonds issued by the district against the first and third assessments, and the interest on the second assessment, had all been paid and the work for which the assessments were levied fully completed

and paid for, there was no longer any lien in existence for said special assessments against said tract of land.

Noticing these contentions of counsel in the order stated, the first might be disposed of by a simple reference to the case of *Gauen* v. *Moredock and Ivy Landing Drainage District*, 131 Ill. 446. In that case the precise question here raised and elaborately argued by counsel was decided, and that decision has been followed in subsequent cases. In *People* v. *Henckler*, 137 Ill. 580, it was said (p. 581): "In *Gauen* v. *Drainage District*, 131 Ill. 446, we held that a drainage district formed under said Levee act may, in the name of the People of the State, foreclose its lien on lands for delinquent special assessments by bill in equity filed under the provisions of section 253 of the Revenue act." In reversing the case of *Sennott* v. *Moredock and Ivy Landing Drainage District*, 155 Ill. 96, for the reason that the bill to foreclose was prosecuted in the name of the district, the cause was remanded, with leave to the complainant to amend his bill so as to make it conform to the requirements of section 253 of the Revenue law, expressly following the *Gauen case.* In the recent case of *People* v. *Weber*, 164 Ill. 412, the question whether section 253 was applicable to these drainage assessments was again presented, and we there said (p. 415): "The first claim made by appellee is, that section 253 of chapter 120 does not authorize a foreclosure for drainage taxes. The Indian Grave drainage district was organized under the act of 1879, providing for the construction, reparation and protection of drains, ditches and levees, and under that act it has been held that a foreclosure may be had under section 253. The bill was therefore properly filed under that section.—*Gauen* v. *Moredock and Ivy Landing Drainage District*, 131 Ill. 446; *People* v. *Henckler*, 137 id. 580; *Sennott* v. *Drainage District*, 155 id. 96."

We have read with much interest the able arguments of counsel in support of their contention that this court was in error in the *Gauen case* in deciding that the word

"taxes," as used in section 253 of the Revenue act, includes special assessments, but after a careful consideration of the points made we see no reason for departing from the conclusions reached in that and subsequent cases. The question is no longer an open one in this State.

As to the second point made by counsel, that there was no valid forfeiture of the tract of land in question, and that therefore equity had no jurisdiction, we are of the opinion that it also is not well taken. Said section 253 provides, that "in proceedings to foreclose the tax lien on any real property, the amount due on the collector's books against the said property shall be *prima facie* evidence of the amount of taxes against the said real property." This provision of the statute evidently means that the amount shown by the collector's books against the property shall be sufficient evidence of the amount due, unless rebutted by evidence. (19 Am. & Eng. Ency. of Law, 83.) The plaintiffs in error, not having appeared in the county court when judgment was rendered upon the application of the collector, were not precluded from raising the question in this case that said judgments for the taxes appearing to be due by the collector's books included certain illegal taxes which the parties in interest had no authority to collect, and they were in this case permitted to raise such question, and the illegal taxes, being separable from the others, were eliminated. But we are not prepared to hold that there was not, within the meaning of the statute, such forfeitures of the property in question as to authorize the filing of the bill for the foreclosure of the lien. Thus, in *Mix* v. *People,* 116 Ill. 265, it was held upon a bill to foreclose a tax lien, that the property owner should be allowed credit for a certain amount of the taxes he had paid, but that there should be a foreclosure for the proper amount. (*Mix* v. *People, supra.*) And in *Sanderson* v. *Town of LaSalle,* 117 Ill. 171, it was said (p. 174): "It must be borne in mind the present suit was not instituted for the purpose of ascertaining whether

the proceedings in the county court, culminating in the judgment against the lot charged with the taxes now sought to be recovered, strictly conform to all the requirements of the statute, as in a case where the validity of a tax title is involved.  On the contrary, this is simply a common law action of debt, to recover the town taxes due on the lot in question.  \* \* \*  In all cases where there has been a forfeiture of land for the taxes justly due upon it, this action will lie against the owner, notwithstanding omissions or irregularities have occurred in the tax proceeding which would be fatal to a tax title founded thereon.  We have no doubt that one of the chief objects the legislature had in view in adopting this act was to afford a safe and simple remedy for the collection of taxes, when, by reason of defects in the proceedings against the land itself, purchasers would be deterred from buying at tax sales."  *Biggins* v. *People*, 106 Ill. 270; *People* v. *Smith*, 94 id. 226; *Belleville Nail Co.* v. *People*, 98 id. 399.

As said in the *Sanderson case*, this is not a suit on a tax title, where an illegal tax would necessarily vitiate the tax title and the validity of such title is the only question at issue, but it is a suit in equity to collect delinquent taxes, and the forfeiture for two years' taxes is by statute made a condition precedent to the right to bring such suit.  No land has been sold for taxes, for the sufficient reason that no one bid at the tax sale, possibly because there was some doubt as to the regularity or validity of some part of the taxes, and the statute has therefore provided this way for the People to recover what is justly due them.  (*Sanderson case, supra.*)  A court of equity always has power to take an account, and a defendant in equity seeking to set aside a forfeiture must pay what in equity and good conscience is due, if he would invoke the aid of the court.  The People here are only seeking a decree for the amount justly due as unpaid taxes, and the court has power to find the amount due, and order a sale if such amount is not paid within the time fixed by it.

It is also urged by plaintiffs in error in this connection, that the third assessment is in excess of the estimated cost of the work and expenses of the proceeding, and that such excess is invalid and by the act of 1881 remitted. Without entering into the details of this third assessment, we think plaintiffs in error are precluded from raising this question here. Section 34½ of the Levee Drainage act makes the judgment of the county court confirming the assessments of benefits and damages conclusive. This assessment was before this court in *Hosmer* v. *Hunt Drainage District*, 135 Ill. 51, and it was there urged that the assessment was in utter disregard of the question whether the lands were benefited to the extent of the assessment or not, but it was there said that "so far as is shown by the record the requirements of the statute were observed by the court and the commissioners." That was a direct proceeding, being on a writ of error to reverse the order confirming the assessment. In this case it is a collateral attack. In *Blake* v. *People*, 109 Ill. 504, this court said (p. 520): "All objections which could have been urged at the time of the confirmation of the assessment roll, and which were not then urged, must be considered as waived, and cannot be urged for the first time on application for sale of lands for a delinquent assessment." In the late case of *People* v. *Weber*, 164 Ill. 412, similar objections were raised, and we said (p. 416): "It would be a sufficient answer as to most, and perhaps all, of them, to say that he was concluded by the judgment of the county court against his land. This is undoubtedly true as to the claims that the aggregate of the assessments would produce more money than the debt of the district which they were needed to pay, and that a part of the assessments had been abated by operation of law. If such defenses existed they should have been made in the county court. The judgment of that court, acting within its jurisdiction, cannot be collaterally attacked when a bill is filed to collect it.—*Riebling* v. *People*, 145 Ill. 120, and cases cited."

The last objection urged is, that as all the indebtedness created to make and complete the improvements for which these special drainage taxes were assessed has been paid, the lien sought to be foreclosed has by such payment been extinguished. Section 26 of the Levee act (Hurd's Stat. 1897, p. 648,) provides: "Said assessments shall be a lien upon the lands assessed as other taxes, and such lien shall continue until said assessments are paid. * * * When an assessment against any tract of land has been fully paid, it shall be the duty of the treasurer of such district to execute and deliver to the owner of such land a release in full, which shall discharge such owner from all further liability to pay the same." Section 253 of the Revenue act provides that the lien therein given shall be a lien "from and including the first day of May in the year in which the taxes are levied until the same are paid." It is not claimed that any part of the assessments on the tract of land in question has been paid, but it is insisted that merely because the work has been completed and paid for this tract is discharged from the lien and that the assessments upon it cannot be collected. It does not appear how or by whom the indebtedness was paid. At any rate, we are of the opinion that the defense cannot be sustained. It would be highly inequitable to allow the owners of this land to reap all the benefits of its improvement by the drainage system established, refuse to pay the installments as they matured, and after all others had paid and sufficient had been collected to pay for the work, then to set up this defense. Had this land contributed its proportionate share, and the defense were against the collection of an installment not needed to complete or pay for the work for which it was assessed, a different question might be presented.

Finding no error in the decree it will be affirmed.

*Decree affirmed.*